SINIRA FUIMAONO LUTU, Plaintiff

v.

MUAMUA SEMEATU and SALA SEMEATU, Defendants

High Court of American Samoa
Land and Titles Division

LT No. 9-87

December 14, 1989

Before REES, Associate Justice, TAUANU'U, Chief Associate Judge,
and AFUOLA, Associate Judge.

Counsel: For Plaintiff, Afoa L.S. Lutu
 For Defendants, Charles V. Ala'ilima

This is a boundary dispute between two parties who purchased adjoining lots in the same subdivision.

Most of the facts are undisputed. Plaintiff and defendants each purchased a portion of a tract of land in Ili'ili called Leuluasi. This

tract, said to contain about 18 acres, had been registered and subdivided in 1974 by one Logotala Noa.

In 1975 Noa sold a lot in the northwest corner of the subdivision, described by reference to certain metes, bounds, and iron pins and further described as containing 1.027 acres more or less, to Vincent Ah San. In 1984 Ah San executed a contract of sale to the defendants, which was recorded in the office of the Territorial Registrar. Ah San also signed a deed conveying the land to the defendants but did not appear before the Territorial Registrar to attest to his signature, apparently because the Semeatus had not yet paid the purchase price. The Registrar has therefore not recorded the deed. Defendant Muamua Semeatu testified that he has paid Ah San about $10,000 of the $15,000 purchase price.

In the meantime, plaintiff had purchased her lot from Noa and recorded the deed in 1981. This lot, like that of defendants, is defined by reference to metes and bounds and iron pins; it is further described as containing .998 acres more or less. It is clear from the maps accompanying the 1975 deed to Ah San and the 1981 deed to plaintiff that the two lots were meant to share a 208-foot border. Plaintiff's property is along the western edge of the subdivision just to the southeast of defendants.

After purchasing their land in 1981 plaintiff and her husband did not immediately build on it. In 1986 plaintiff went to clear what she thought was her land and found much of it occupied by defendants. This lawsuit followed.

Each party hired a surveyor to retrace his or her boundaries. Each surveyor testified that he had found a few old pins and other landmarks, although not many, suggesting that the boundary was where his client said it was. On balance this evidence was not particularly helpful to either party.

Each party also offered evidence offered that his or her boundaries were accepted as such by other neighbors. Unfortunately, this evidence also pointed both ways.

It appears that the line used by defendants to calculate their western boundary (i.e., the western boundary of the whole Leuluasi subdivision) roughly corresponds to the boundary observed by the occupants of a tract to the west. This tract, called Lauofe, was

registered in 1981 as the property of Lupelele Letuligasenoa, and its occupants are there by permission either of Lupelele or the late Ti'a Misilagi. (Lupelele and Ti'a are prominent land claimants in and around Ili'ili.) The boundary observed by plaintiff, on the other hand, corresponds to the boundaries observed by most if not all of the other residents of the Logotala Noa subdivision.

Whether or not acceptance of certain boundaries by neighbors is part of the solution to this case, it definitely is part of the problem. If plaintiff is right about her boundary with defendants, then the tract purchased by defendants is further to the west than defendants claim it to be, and therefore includes an area currently occupied by the Lupelele or Ti'a people. If defendants are right, then not only plaintiff but everyone else in the subdivision is mistaken: plaintiff's eastern and southern neighbors are encroaching on her land, and those neighbor's own eastern and southern neighbors are committing a similar encroachment, and so forth.

At the conclusion of the trial the Court observed that neither side had presented what appeared to be a crucial piece of evidence: expert testimony with respect to the actual physical location of the two coordinates ($X = 239,818.75'$, $Y = 283,953.05'$) defining the starting point of the subdivision. The legal descriptions of both plaintiff's and defendants' land consisted of metes and bounds defined by reference to this point. The point, in turn, is defined as being a relatively short distance (1328 feet) in a specified direction from a point (the Agogo Triangulation Station) whose location is undisputed. If this point could be relocated on the ground, and if it was correctly located when Noa did his survey in 1974, the Court would be able to identify with certainty the true boundary between plaintiff's land and that of defendants.

Plaintiff's surveyor apparently did not attempt to relocate the original starting point on the ground by reference to the Triangulation Station because he accepted the accuracy of a point identified by Tito Malae, an occupant of the subdivision who had purchased his lot from Noa in 1983. The Court asked defendants' surveyor why he had not located this point on the ground; he said that he considered this exercise too time-consuming and that the evidence he had already presented was more probative than the physical location of the point in question. The Court respectfully disagreed and ordered the parties to present evidence by August 31, 1989, of the physical location of the starting point defined in the 1974 survey. The Court ordered that the parties agree on a single

surveyor to do the necessary work, or in the event such agreement should prove impossible that each party choose a surveyor and the two surveyors choose a third surveyor to locate the point of beginning.

August 31 came and went with no submission of evidence by the parties or either of them and no request for an extension. The High Court of American Samoa being an extraordinarily easygoing tribunal with respect to its treatment of those who inadvertently disobey its orders, the Court waited until mid-October and then asked the Clerk to inquire after the missing evidence.

Counsel for defendants responded with a memorandum reiterating his position that the evidence requested by the Court was unimportant compared to the evidence already submitted by defendants, and concluding with the observation that "defendants' surveyor does not have sufficient information to either retrace the original surveyor's control in the field or to calculate the accuracy of the mathematics used to establish the co-ordinates given." Although couched in language suggesting the impossibility of compliance with the Court's order, on closer inspection this statement amounts to yet another reiteration of defendants' original position that the evidence sought by the Court was not important because the original surveyor might have been mistaken about the coordinates.

While it is impossible for a Court to evaluate evidence it has not yet seen, we have as yet no reason to believe that the coordinates depicted in the 1974 survey map --- the key link in each party's chain of title --- were anything but an accurate representation of the point from which Logotala made his original survey on the ground. Counsel for defendants advances no particular reason to believe any such error occurred, but seems to say that if the point depicted by the coordinates should turn out to be anywhere but where his surveyor says it ought to be, then the coordinates would necessarily be wrong. For reasons we shall discuss, this contention rests on a vastly inflated estimate of the strength of the evidence presented by defendants. If, however, counsel for defendants had wished to readvance this argument in an effort to persuade the Court to reconsider its order, he should have filed a motion for reconsideration within ten days after the order was made. Instead he apparently chose simply to ignore the order.

Courts usually deal with a party's refusal to produce evidence by presuming conclusively that the evidence would be unfavorable to the

91

party. In this case, however, the defendants were not alone in ignoring the order. When the Clerk contacted counsel for plaintiff to inquire about the supplemental evidence, counsel responded that he had been very busy and had not been able to get to it. Like counsel for defendants, he expressed the opinion that the evidence already presented clearly preponderated in favor of his own client and obviated the need for further evidence.

The Court has given serious consideration to imposing sanctions on both counsel. Our decision not to do so should not be regarded as a precedent likely to be followed in future cases.

We are left to decide the case on the preponderance of the evidence before us. This evidence, although hardly clear and convincing, favors the plaintiff.

Both parties agreed that many if not all of the original 1974 pins and monuments can no longer be located and have probably been removed, and that many new monuments have been placed by various persons since 1974. Defendant Muamua Semeatu himself admits to having removed survey pins, although he insists that he has removed only new, illegitimate pins and not old legitimate ones. All of the pins and other man-made monuments (fences, hedges, etc.) "found" by defendants' surveyor could easily have been placed there some years after 1974 by persons --- most notably defendants themselves, their grantor Ah San, and the Lupelele or Ti'a people to the west --- whose interests may have consisted not in perpetuating the 1974 boundary but in relocating it. Indeed, one of the surveyors who surveyed the tract sold to Ah San by Noa in 1974 testified that he revisited the land in or around 1985 and that Ah San's tract (which Ah San had contracted to sell to defendants) was by then located in a different place.

It further appears that the 1981 survey of Lauofe registered by Lupelele substantially encroaches on the northwestern corner of the 1974 Leuluasi survey registered by Logotala. According to the survey maps, any attempt by the residents of Lauofe to occupy the entire extent of the area claimed by Lupelele would consume all the land purchased by the defendants and much of that purchased by the plaintiff.

This evidence, together with the Court's impression of the witness Ah San as a man with a healthy regard for his own interests but no taste for outright disagreement with anyone, supports plaintiff's contention that Ah San --- or possibly defendants themselves --- moved

to the south and east of the tract Ah San had purchased from Noa in order to avoid a boundary dispute with his western neighbors, or perhaps as the result of such a dispute. This put him in occupation of a substantial portion of the tract sold to plaintiff Lutu but not yet occupied by her. Although the evidence for this contention is circumstantial rather than direct, it is less speculative and more consistent with the record than defendants' contention that the various other buyers in the Leuluasi subdivision --- including the Nomuras, who purchased their tract in 1975, before the Ah San purchase and only a year after the original survey by Noa --- all made an identical mistake about the location of the boundaries of this survey.

Nor does the evidence support defendants' contention that any conflict must be resolved in their favor because their grantor, Ah San, purchased his tract before plaintiff purchased hers. This does not appear to be a case in which a common grantor sold two parties the same land; on the contrary, the deeds to Ah San and the plaintiff clearly describe two different parcels which adjoin but do not overlap. If the tract sold to Ah San really belonged to Lupelele, there was no reason to take it out on Mrs. Lutu. If (as seems more likely in light of the undisputed facts that Lupelele's survey was not registered until seven years after Noa's and that the area now in dispute was jungle in 1974) the Lupelele people began encroaching on Ah San's land at some time after he bought it, then his remedy was against them and not plaintiff Lutu.

Defendants could purchase from Ah San only what he owned. This appears to be a tract whose boundary with defendant is about 84 feet to the north and west of the boundary they claim, to the northwest of the land designated "disputed area" in Plaintiffs' Exhibit 4.

Although it would appear from the evidence that defendants may have a claim against Ah San and/or their neighbors to the west, no such claims can be adjudicated in this action.

For the reasons stated, judgment will be entered for the plaintiff permanently enjoining the defendants from going on the tract belonging to plaintiff, including the land designated "disputed area" in Exhibit 4. Execution of this judgment will be stayed for sixty days to allow defendants time in which to harvest crops and remove any other property they may have in the disputed area.

It is so ordered.